IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| STEVE COTTRELL,<br><br>Petitioner,<br><br>vs.<br><br>WARDEN MIKE MARINICH,<br><br>Respondent. | CASE NO. 1:26-cv-0279<br><br>DISTRICT JUDGE<br>BENITA Y. PEARSON<br><br>MAGISTRATE JUDGE<br>JAMES E. GRIMES JR.<br><br>**REPORT AND RECOMMENDATION** |

Steve Cottrell filed a Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus. Doc. 1. Cottrell is currently in custody at the Marion Correctional Institution serving a sentence of life with the possibility of parole after 20 years plus aggregate consecutive terms of 11 years imposed by the Cuyahoga County Court of Common Pleas in *State v. Cottrell*, Case No. 409361. Doc. 10-1, at 21. The Court referred this matter to a Magistrate Judge under Local Rule 72.2 for the preparation of a Report and Recommendation. For the following reasons, I recommend that the Court dismiss Cottrell's petition.

**Summary of underlying facts**

In habeas corpus proceedings brought under 28 U.S.C. § 2254, factual determinations made by state courts are presumed correct. 28 U.S.C. § 2254(e)(1). "This presumption also applies to the factual findings that [a] state appellate court makes on its review of the state trial record." *Johnson v. Bell*,

525 F.3d 466, 474 (6th Cir. 2008). The petitioner has the burden of rebutting that presumption by clear and convincing evidence. *Id.*

The Ohio Court of Appeals for the Eighth Appellate District summarized the facts underlying Cottrell's conviction as follows:

> {¶4} Jermelle Thomas testified he was in a gang called the Tribe, to which Antonio Marshall and Larry and Othello Calloway also belonged. According to Thomas, Cottrell belonged to a rival gang called the Low Valley, which included among others Marcus Dupree.
>
> {¶5} Thomas stated in the early afternoon of May 30, 2001, he and some of the Tribe members were playing basketball at a house near Shaw High School. One of the Tribe members spotted Cottrell and Dupree in the nearby parking lot and warned the others that it appeared something was going to happen. The two groups exchanged words, then Cottrell pulled out a gun and began shooting. The group dispersed and ran. No one was injured.
>
> {¶6} Later that evening, Thomas went to Larry Calloway's girlfriend's house, Regina Cook, where the rest of the group had congregated to admire the new rims that Calloway had put on Antonio Marshall's truck. According to Thomas, as the group was looking at the rims, he heard gunshots. He turned and saw two men about three to four houses away, both shooting. He recognized one of the shooters, who was standing near a light in one of the yards, as Cottrell.
>
> {¶7} Thomas was hit in the backside and sustained severe injuries requiring him to undergo two surgeries and to spend two weeks in the hospital. Larry Calloway sustained a fatal gunshot injury.
>
> {¶8} Antonio Marshall and Othello Calloway both testified to basically the same testimony as Thomas

regarding the shooting. However, they never looked to see who was shooting at them.

{¶9} Officers Vargo and Bechtel both testified they responded to a radio dispatch call at around 11:00 p.m. regarding shots fired and one man down. Upon arrival at the scene, they discovered Calloway, dead, on the sidewalk, and Thomas badly injured in the driveway. The officers recovered several .380 shell casings from the scene.

{¶10} Ruben Coleman testified earlier in the day he was playing basketball with some of the Tribe members, but was not there when the shots were fired. Later that night, he was around the corner from Regina Cook's house when he heard about seven to ten shots fired. He said the shots sounded different from each other, indicating that two guns were used. When he returned to Cook's house to see what had happened, he saw Calloway on the ground.

{¶11} Jamillah Marlisa Bennett testified she was at home when she heard shots fired. She looked outside her backyard and saw two boys running in her backyard, wearing black and blue clothes. She recognized one of the boys as Dupree as he had previously attempted to ask her out.

{¶12} Richard Johnson was arrested after he turned himself in and entered a full written confession. He testified at trial in exchange for a voluntary manslaughter plea. According to Johnson, on the day of the murder, he had been at Kisha Tucker's house with Cottrell and Dupree and that Cottrell showed him a .380 automatic gun he had. Later that evening, Johnson borrowed a car from a friend in exchange for crack cocaine. He then picked up Cottrell and Dupree from Kisha Tucker's house and they drove around looking for members of the Tribe. They spotted the group on Elwood. Johnson drove down a side street and parked. Cottrell and Dupree exited the car and walked through backyards on Elwood towards the group. According to Johnson, about ten minutes later, he heard gunshots and saw

> Cottrell and Dupree running towards the car. When they got into the car, Dupree remarked that he heard one of them yell "ow." Johnson then dropped Dupree and Cottrell off at East 143rd street and left to return the car.
>
> {¶13} Detective Cardilli testified Cottrell approached him on June 1, 2001, and told the detective that he heard he was looking for him. Cottrell gave the officer a statement in which he denied having anything to do with the shootings and claimed to be at his girlfriend's house at the time.
>
> {¶14} Tony Bonds testified he was walking with friends to a friend's house earlier that day, and that Cottrell asked him what he was looking at and then flashed him his gun. Bonds quickly ran into his friend's house.
>
> {¶15} According to the coroner, the bullet removed from Calloway appeared to be a bullet that had ricocheted before hitting Calloway because it was almost split down the middle and flattened. It had entered Calloway's left arm and traveled to his heart.
>
> {¶16} Based on the above evidence, the jury found Cottrell guilty as charged. The trial court, after obtaining a presentence investigation report, sentenced Cottrell to twenty years to life on the aggravated murder count, consecutive to three years for the firearm specification and gang specification; for the attempted murder of Thompson, he received five years consecutive to the aggravated murder charge; and five years each on the remaining attempted murder charges to run concurrent with the rest of the sentence.

*State v. Cottrell*, 2003-Ohio-5806, 2003 WL 22455212, at *1–2 (Ohio Ct. App. 2003).

**Procedural background**

*Direct appeal*

Following his conviction in May 2002, *see* Doc. 10-1, at 21, Cottrell filed a timely notice of appeal, *id*. at 23. In his supporting brief, he raised nine assignments of error. *Id.* at 30–31. The court of appeals affirmed Cottrell's conviction in October 2003. *Cottrell*, 2003 WL 22455212, at *9.

Cottrell filed an appeal with the Ohio Supreme Court in December 2003. *See* Doc. 10-1, at 517, 525. On March 24, 2004, the Ohio Supreme Court denied leave to appeal and dismissed Cottrell's appeal. *Id*. at 525; *see State v. Cottrell*, 2004-Ohio-1293, 805 N.E.2d 540 (Ohio 2004).

*Cottrell first two collateral state-court challenges*

In July 2006, Cottrell filed in the trial court a "motion for correction of sentence." Doc. 10-1, at 165–72. The trial court denied the motion in December 2006. *Id*. at 173. Cottrell did not appeal the trial court's decision.

In December 2010, Cottrell filed in the trial court a "motion to void judgment." *Id.* at 174–77. The trial court denied the motion later that month. *Id*. at 185. Cottrell did not appeal the trial court's decision.

*Cottrell's successful, second motion to vacate*

In August 2011, Cottrell filed in the trial court a "motion for vacation of void judgment." *Id*. at 186–92. The trial court denied the motion in November 2011. *Id*. at 203. Cottrell filed a timely notice of appeal. *Id*. at 204. In June 2012, the Ohio court of appeals held that the trial court erred in its imposition

of postrelease control. *State v. Cottrell*, 2012-Ohio-2634, 2012 WL 2150745, at *1–2 (Ohio Ct. App. 2012). The court issued a limited remand, rather than "a de novo sentencing hearing," so that the trial court could "proper[ly] impos[e] postrelease control." *Id*. at *2.

During a hearing in October 2012, Cottrell's counsel asked for "de novo resentencing." Doc. 10-2, at 1948. The trial court then re-imposed the custodial sentence previously imposed and added a mandatory term of five years' postrelease control on each felony count of conviction. *Id*. at 1951.

Cottrell filed a timely notice of appeal. Doc. 10-1, at 234. In his supporting brief, Cottrell claimed that he was denied due process when the trial court retroactively imposed mandatory conditions that did not exist when he was sentenced. Doc. 10-1, at 239, 242–44. The Ohio court of appeals rejected Cottrell's argument and affirmed in July 2013. *State v. Cottrell*, 2013-Ohio-2912, 2013 WL 3422914 (Ohio Ct. App. 2013).

Cottrell moved the court of appeals to reconsider its decision. Doc. 10-1, at 261–63. The court of appeals denied reconsideration in a brief order issued at the end of July 2013. *Id*. at 269.

Cottrell sought review of both decisions in the Ohio Supreme Court in August 2013. *Id*. at 270–71, 291. In November and December 2013, the Ohio Supreme Court respectively declined under its rule of practice 7.08(B)(4) to accept jurisdiction of the appeals. *Id*. at 290, 308.

*Cottrell's post-sentencing motions*

Meanwhile, Cottrell filed a (1) motion to vacate or set aside, *id*. at 309–12; (2) motion to dismiss judgment, *id*. at 328–40; (3) petition for writ of error quo warranto, *id*. at 346–50; (4) motion to disclose due process material, *id*. at 372–74; (5) motion to suppress, *id*. at 385–90; and (6) second petition for writ of error quo warranto, *id*. at 392–402. The trial court denied these motions and petitions. *Id*. at 327, 345, 355, 384, 391, 408.

*Motion for new trial*

In November 2023, Cottrell filed a motion under Ohio Criminal Rule 33(A)(1) and (B) for leave to file a motion for a new trial.[1] *Id*. at 409–14. In his

---

[1] Rule 33(A)(1) and (B) provide:

> (A) Grounds. A new trial may be granted on motion of the defendant for any of the following causes affecting materially the defendant's substantial rights:
> (1) Irregularity in the proceedings, or in any order or ruling of the court, or abuse of discretion by the court, because of which the defendant was prevented from having a fair trial;
>
> ....
>
> (B) Motion for New Trial; Form, Time. Application for a new trial shall be made by motion which, except for the cause of newly discovered evidence, shall be filed within fourteen days after the verdict was rendered, or the decision of the court where a trial by jury has been waived, unless it is made to appear by clear and convincing proof that the defendant was unavoidably prevented from filing his motion for a new trial, in which case the motion shall be filed within seven days from the order of the court finding

motion, Cottrell stressed that his motion was "merely a precursor seeking permission to file a Motion for a New Trial." *Id*. at 410. He added that the forecasted later motion would be based on ineffective assistance of trial counsel. *Id*. Cottrell alleged, with reference to his own affidavit, that his trial counsel did not present to him a potential plea deal that the trial court discussed with counsel on the record in 2002. *Id*. at 410–11. According to Cottrell, he "did not become aware of the" offer "until sometime in late 2020." *Id*. at 411. He then argued that he only needed to show that he was "unavoidably prevented" from discovering his motion's basis and that he did not need to file his motion within a reasonable time after discovering the basis for the motion. *Id*. at 411–12.

The trial court denied the motion on November 14, 2023. *Id*. at 418–21. It held that "[t]he 'newly discovered' irregularity stems from proceedings conducted prior to commencement of the trial." *Id*. at 421. The trial court held

---

> that the defendant was unavoidably prevented from filing such motion within the time provided herein.
>
> Motions for new trial on account of newly discovered evidence shall be filed within one hundred twenty days after the day upon which the verdict was rendered, or the decision of the court where trial by jury has been waived. If it is made to appear by clear and convincing proof that the defendant was unavoidably prevented from the discovery of the evidence upon which he must rely, such motion shall be filed within seven days from an order of the court finding that he was unavoidably prevented from discovering the evidence within the one hundred twenty day period.

that the "proceedings were" apparently "a matter of record although [Cottrell] failed to present a transcript of the proceedings or any other evidence related to the proceedings." *Id*. Instead, Cottrell presented "only conclusory allegations that he was unavoidably prevented from discovering the purported new evidence." *Id*. The trial court thus held that Cottrell "failed to submit documents which, on their face, support his claim that he was unavoidably prevented from timely discovering the evidence at issue." *Id*.

Cottrell appealed on December 11, 2023. *Id*. at 422. In his supporting brief, he made an argument nearly identical to the one that he presented to the trial court. *Compare id*. at 409–14, *with id*. at 437–41.

On October 10, 2024, the Ohio court of appeals affirmed. *State v. Cottrell*, 2024-Ohio-4900, 2024 WL 4457502 (Ohio Ct. App. 2024). The Court of appeals held that a movant under Rule 33 must either file his motion within 14 days of a jury's verdict or "obtain leave from the trial court to file the motion." *Id.* at *3. It further explained that "[t]o obtain leave to file a motion for new trial, the defendant must establish by 'clear and convincing proof that the defendant was unavoidably prevented from filing his motion for new trial ... within the time provided.'" *Id.* (citation omitted). To do that, the movant must show that he "'had no knowledge of the existence of the ground supporting the motion for new trial and could not have learned of the existence of that ground within the time prescribed for filing the motion for new trial in the exercise of reasonable diligence.'" *Id.*

The court of appeals determined "that the alleged plea offer was contained in the trial transcript that has been part of the appellate record since Cottrell's direct appeal in 2002." *Id.* at *4. And, in Ohio, "'[e]vidence is not undiscoverable simply because no one looked for it.'" *Id.* (quoting *State v. Smith*, 2024-Ohio-1360, 2024 WL 1571840, at *18 (Ohio Ct. App. 2024)). The court of appeals added that "Cottrell's affidavit, which simply states he was unaware of the alleged plea offer until he received a private investigator's report in 2020, was insufficient to meet this burden." *Id*. The court of appeals next determined that because Cottrell could have raised his issue on direct appeal, his claim was barred by Ohio's res judicata rule. *Id*. Finally, the court rejected Cottrell's argument that he didn't need to file his motion within a reasonable time after he discovered the new evidence that formed the basis for his motion. *Id*. at *5.

Cottrell filed a notice of appeal to the Ohio Supreme Court on November 25, 2024. Doc. 10-1, at 474–75. In his memorandum in support of jurisdiction, Cottrell again recycled the argument that he presented in his motion. *Compare id*. at 409–14, *with id*. at 492–96. The Ohio Supreme Court declined under its rule of practice 7.08(B)(4) to accept jurisdiction of the appeal. *Id*. at 498.

*Federal habeas corpus petition*

On January 27, 2026, Cottrell filed a federal habeas corpus petition under 28 U.S.C. § 2254.[2] Doc. 1. Cottrell raises one ground in support of his petition:

> This cause concerns a Motion filed by Petitioner seeking leave to file a Motion for a New Trial based upon an error which was not discovered until well after the time for filing such a Motion had expired. Briefly, the record shows that in a hearing out of the presence of Petitioner his trial counsel was instructed to present a plea offer to him. Evidence outside the existing record shows that his plea offer was never presented to Petitioner. Under these circumstances, Petitioner submits that he received ineffective assistance of trial counsel.[3]

Doc. 1, at 9. The Warden moved to dismiss, Doc. 10, and Cottrell filed a traverse, Doc. 12.

---

[2] Cottrell's petition does not state when he placed his petition in his prison's mail. *See* Doc. 1 at 8. So he cannot take advantage of the prison-mailbox rule.

[3] This language is lifted verbatim from Cottrell's memorandum in support of jurisdiction that he filed with the Ohio Supreme Court. *See* Doc. 10-1, at 490.

**Law and analysis**

*Cottrell's petition is time-barred and not cognizable*

The Warden argues that Cottrell's petition is untimely. Doc. 10, at 13–15. I agree.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA" or "the 1996 Act"), Pub. L. No. 104–132, 110 Stat. 1214, provides a one-year limitations period in a habeas action brought by a person in custody from a state court judgment. Under 28 U.S.C. § 2244(d)(1), the limitation period runs from the latest of—

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

Under subparagraph (A), a judgment becomes final at the "conclusion of direct review or [on] the expiration of the time for seeking such review." After

the trial court resentenced Cottrell in October 2012,[4] Doc. 10-2, at 1951, the Ohio court of appeals affirmed the trial court in July 2013, *Cottrell*, 2013 WL 3422914. From there the court of appeals denied reconsideration, Doc. 10-1, at 269, and on November 20, 2013, and December 4, 2013, the Ohio Supreme Court respectively declined under its rule of practice 7.08(B)(4) to accept jurisdiction of Cottrell's appeals of the court of appeals' two decisions, *id*. at 290, 308.

Cottrell had 90 days from the date of the Ohio Supreme Court's December 4, 2013 decision to petition for certiorari in the United States Supreme Court. *See* Sup. Ct. R. 13. Cottrell, however, did not file a petition for certiorari. So the 90-day period expired on March 4, 2014. The limitations period began running the next day, *see Bronaugh v. Ohio*, 235 F.3d 280, 285 (6th Cir. 2000) (the statute of limitations begins running the day after the event or default), and expired one year later, on March 5, 2015.

As noted, however, Cottrell filed his habeas petition in January 2026, nearly eleven years too late. So unless Cottrell is entitled to a later start date under 28 U.S.C. § 2244(d)(1)(B), (C), or (D), or his time to file his petition was otherwise tolled, his habeas petition is untimely.

---

[4] The trial court's limited resentencing modified the postrelease control portion of Cottrell sentence, changing it from "a possibility" to a certainty. *Cottrell*, 2012 WL 2150745, at *1–2; Doc. 10-2, at 1951. Because it makes no difference to the outcome of this petition, I assume that this resentencing constitutes "[a] new, worse-than-before sentence," which "amounts to a new judgment" sufficient to restart the Section 2244(d)(1) timeclock. *See Freeman v. Wainwright*, 959 F.3d 226, 229–30 (6th Cir. 2020).

Unfortunately, Cottrell, who is represented by counsel, does not give the Court much to work with in response to the Warden's timeliness argument. It's Cottrell's burden to show that he is entitled to a later start date under Section 2244(d). *See DiCenzi v. Rose*, 452 F.3d 465, 471 (6th Cir. 2006). But he does not claim that 28 U.S.C. § 2244(d)(1)(B), (C), or (D) could apply. So Cottrell has forfeited any argument based on those provisions. *See Williamson v. Recovery Ltd. P'ship*, 731 F.3d 608, 621 (6th Cir. 2013).

Instead of addressing the Warden's argument, Cottrell takes a different approach. The first five pages of the argument section of his traverse are lifted, nearly word-for-word, from his memorandum in support of jurisdiction that he filed with the Ohio Supreme Court. *Compare* Doc. 12, at 3–7, *with* Doc. 10-1, at 491–96. This portion of Cottrell's traverse doesn't deal with the Warden's timeliness argument.

From there, Cottrell provides extended block quotes from two opinions. *See* Doc. 12, at 7–11. Cottrell provides a nearly four-page block quote from *Cleveland v. Bradshaw*, 693 F.3d 626 (6th Cir. 2012). In *Cleveland*, the Sixth Circuit discussed the "*Schlup* gateway." 693 F.3d at 631–33; *see Schlup v. Delo*, 513 U.S. 298 (1995). According to the Court in *Cleveland*, this gateway entitles "a petitioner who presents a credible claim of actual innocence … to equitable tolling of AEDPA's statute of limitations" thus permitting consideration of "the merits of his constitutional claims despite a procedural bar that would ordinarily preclude such review." 693 F.3d at 631–32.

What *Cleveland* has to do with Cottrell is a mystery. Contrary to what he states in his traverse, Cottrell has not "maintained his actual innocence." Doc. 12, at 12. Rather, "[t]he gravamen of" his motion for a new trial "concerned [his allegation] that a plea offer had been made which was never communicated to" him. Doc. 10-1 at 490. In other words, his claim is not that he is innocent; it's that he might have pleaded guilty had he known about a plea offer.

Cottrell also offers a quote from *Taylor v. Palmer*, 623 F. App'x 783 (6th Cir. 2015). Doc. 10-1, at 11. According to the quoted portion of *Taylor*, "[e]ven when a habeas petition is untimely, the doctrine of equitable tolling 'allows courts to toll a statute of limitations when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control.'" 623 F. App'x at 787 (quoting *Robertson v. Simpson*, 624 F.3d 781, 783 (6th Cir. 2010)). Courts, however, should only resort to equitable tolling "'sparingly' …. and the burden is on the movant to prove its applicability." *Id.* (citation omitted). Further, the movant bears the burden to show "(1) 'that he has been pursuing his rights diligently,' and (2) 'that some extraordinary circumstance stood in his way and prevented timely filing.'" *Id.* (quoting *Hall v. Warden, Lebanon Corr. Inst.*, 662 F.3d 745, 749–50 (6th Cir. 2011) (in turn quoting *Holland v. Florida*, 560 U.S. 631, 649 (2010)).

Again, Cottrell leaves it to the Court to puzzle why he quotes *Taylor*. He claims that his "is almost a text[]book case where equitable tolling should

apply," Doc. 12, at 11–12, but he doesn't explain why. Aside from a few conclusory assertions, which establish nothing, *see Magnum Towing & Recovery v. City of Toledo*, 287 F. App'x 442, 449 (6th Cir. 2008), Cottrell offers nothing to support his burden to show both that he acted diligently and "that some extraordinary circumstance stood in his way and prevented timely filing." And it is not up to the Court to "construct arguments" for him. *United States v. Robinson*, 99 F.4th 344, 356 n.3 (6th Cir. 2024). So there is no basis to conclude that Cottrell is entitled to equitable tolling.

To be clear, there is no apparent way for Cottrell to show that he is entitled to equitable tolling. The Ohio court of appeals determined that "the alleged plea offer" that formed the basis for Cottrell's motion for a new trial "was contained in the trial transcript that has been part of the appellate record since Cottrell's direct appeal in 2002." *Cottrell*, 2024 WL 4457502, at *4. This determination is presumed correct. *See* 28 U.S.C. § 2254(e)(1); *Johnson*, 525 F.3d at 474. But Cottrell doesn't try to overcome this presumption. Indeed, even under his telling, he learned of the plea offer in late 2020, Doc. 10-1, at 415, nearly five years before he filed his habeas petition and almost three years before he moved for a new trial. Yet the years-long gap following when he allegedly learned of the plea offer is unexplained. So there is no basis to conclude that Cottrell acted diligently or that something stood in the way of him discovering the basis for his petition.

Finally, even putting the above aside, Cottrell faces another hurdle. When it ruled on Cottrell's appeal of the denial of his motion for a new trial, the Ohio court of appeals did not rule based on any federal constitutional principle or United States Supreme Court precedent. Instead, the court of appeals affirmed the trial court because Cottrell did not meet the standard in Ohio Rule of Criminal Procedure 33(A)(1). *Cottrell*, 2024 WL 4457502, at *3–5. Specifically, the court of appeals held that the trial court did not abuse its discretion because the plea offer at issue was evident in the record, Cottrell otherwise failed to carry his burden, and Ohio's res judicata rule barred review of his argument.[5] *Id*. at *4. In other words, the court of appeals ruled based on questions of state law.

In conducting habeas review under 28 U.S.C. § 2254, however, this Court does not "reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991); *see Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) ("[F]ederal habeas corpus relief does not lie for errors of state law."). Rather, this Court "is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle*, 502 U.S. at 68; *see* 28 U.S.C. § 2254(a). "[O]nly an error of state law that denies 'fundamental fairness' such that due process is violated supports a federal habeas corpus claim." *Cobble v. Smith*, 154 F. App'x 447, 454 (6th Cir. 2005).

---

5 Under Ohio's res judicata rule, "a petitioner is not entitled to raise claims in post-conviction proceedings where those claims could have been raised on direct appeal." *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006).

Cottrell does not claim that when the trial court denied his motion for a new trial, the court acted in a manner that was "fundamental[ly] [un]fair[] such that [Cottrell's] due process [right were] violated." *Id*. Indeed, he doesn't argue that the trial court—or the Ohio court of appeals—committed an error of constitutional magnitude with respect the adjudication of his motion for a new trial. As a result, even if Cottrell's petition were timely, which it is not, the Court could not review the issue Cottrell presents because the issue concerns a matter of state law.

**Conclusion**

For the reasons discussed, the Court should dismiss Cottrell's Petition as untimely.

Dated: October 19, 2026

*<u>/s/James E. Grimes Jr.</u>*
James E. Grimes Jr.
U.S. Magistrate Judge

**OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Court within 14 days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F.3d 520, 530-31 (6th Cir. 2019).